IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

CLIFTON COUNCIL, JR.,            )
Reg. No. 54111-509,              )
                                 )
        Petitioner,              )
                                 )
    v.                           )        CASE NO. 2:25-CV-312-WKW
                                 )               [WO]
WARDEN WASHINGTON,               )
                                 )
        Respondent.              )

## MEMORANDUM OPINION AND ORDER

## I.  INTRODUCTION

Petitioner Clifton Council, Jr., an inmate in the custody of the Federal Bureau of Prisons (BOP) at the Federal Prison Camp in Montgomery, Alabama, is serving a 120-month sentence.  *See United States v. Council*, No. 1:21-cr-86-SNLJ-5 (E.D. Mo. Feb. 23, 2023), ECF Nos. 498, 537.  Proceeding *pro se*, he filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, alleging that the BOP violated his federal due process rights by denying him earned time credits under the First Step Act of 2018 (FSA).  (Doc. # 1 at 4, ¶ 31; Doc. # 1 at 5, ¶¶ 43–44.)

In response to the § 2241 petition, Respondent Warden Washington seeks dismissal on the following grounds:  (1) Petitioner's claims regarding the calculation of FSA credits are not ripe for review and thus subject matter jurisdiction is lacking; (2) Petitioner did not exhaust his administrative remedies prior to filing this petition;

and (3) Petitioner fails to state a due process claim because he lacks a liberty interest in FSA earned time credits.  (Doc. # 10 at 2–3.)  Thereafter, Petitioner filed a reply brief.  (Doc. # 11.)

For the reasons to follow, Respondent's response is construed as containing: (1) a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction; and (2) a Rule 12(b) motion to dismiss for failure to exhaust administrative remedies.  *See* Fed. R. Civ. P. 12(b).  Based on a thorough review of the record, the petition must be dismissed without prejudice for lack of subject matter jurisdiction or, alternatively, to permit Petitioner to exhaust his administrative remedies.  It is unnecessary to reach Respondent's third argument challenging the merits. Additionally, no evidentiary hearing is necessary to resolve these motions.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* [hereinafter, *Rules Governing § 2254 Cases*].[1]

## II. BACKGROUND

In 2018, Congress passed the FSA.  *See* Pub. L. No. 115-391, 132 Stat. 5194 (2018) (codified at 18 U.S.C. §§ 3621, 3624, 3631–35).  The FSA's provisions work

---

[1] The *Rules Governing § 2254 Cases* apply to petitions under 28 U.S.C. § 2241.  *See* Rule 1(b), *Rules Governing § 2254 Cases* (providing that the *Rules Governing § 2254 Cases* apply to habeas corpus petitions filed under provisions other than § 2254).  Although the Rules Governing § 2254 Cases do not address motions to dismiss, they permit the application of the Federal Rules of Civil Procedure when there is no conflict with the habeas statutes or rules.  Rule 12, *Rules Governing § 2254 Cases*.  In this instance, applying Rule 12(b) of the Federal Rules of Civil Procedure does not present any conflict.

together to motivate eligible inmates to participate in recidivism-reduction programs by awarding them earned time credits.  §§ 3621(h), 3624(g), 3632.  Participants may earn 10 days, or in some instances 15 days, of credit for every 30 days of successful program participation.  Each earned time credit equals one day.  *See* 18 U.S.C. §§ 3621, 3624, 3631–35.  Under the FSA, earned time credits are applied to accelerate an inmate's transfer either to prerelease custody, which includes residential reentry centers and home confinement, or to supervised release if such a term has been imposed.  *See* 18 U.S.C. § 3624(g).

In his petition, filed in April 2025, Petitioner seeks the restoration of "24 days of FSA" credit that he alleges he accumulated while in transit to FPC Montgomery following his sentencing date and "60 days" the BOP disallowed from "his total FSA placement days."[2]  (Doc. # 1 at 1, ¶ 7; Doc. # 1 at 5, ¶¶ 46–47; Doc. # 1-1 at 2.)  He further complains that the BOP has projected only 360 days toward his FSA conditional placement date, which the BOP has set as December 17, 2027.  (Doc. # 1 at 5 ¶ 48; *see also* Doc. # 1-1 at 4.)  The FSA conditional placement date is the date when a prisoner potentially is eligible for prerelease custody based on projected earned FSA time credits.  *See Crowe v. Fed. Bureau of Prisons*, 2025 WL 1635392,

---

[2] Along with his petition, Plaintiff submitted a BOP document, titled "FSA Time Credit Assessment," dated February 26, 2025, which details Petitioner's accrued program days, disallowed program days, accrued earned time credits, and the potential applications of various credits to his release and other placement dates.  (Doc. # 1-1 at 2–4.)

at *4 (D.D.C. June 9, 2025). Based on Petitioner's calculations, he anticipates earning an additional 785 conditional placement days when those days are computed through the end of his sentence. (Doc. # 1 at 5, ¶ 47; *see also* Doc. # 1 at 4, ¶¶ 32–41.) He requests that these 785 days be added to his FSA conditional placement date and argues that, with these correct projected calculations, his eligibility for prerelease custody would be December 4, 2026. (Doc. # 1 at 5, ¶¶ 47, 48.) He contends that the BOP is refusing to account for potential FSA time credits that could be earned during future prerelease custody, which impacts the calculation of his earliest possible prerelease placement date. (Doc. # 1 at 4, ¶¶ 40, 41.) Petitioner requests the court to "order the Respondent to restore the days that were earned while in transit, forecast all FSA credits throughout the duration of Petitioner's sentence[,] and apply those credits to early prerelease custody. . . ." (Doc. # 1 at 6.)

In his petition, Petitioner does not state whether prior to bringing the petition, he exhausted the BOP's administrative-remedy program. He seemingly concedes his failure to do so by stating, "Petitioner prays that this Court accept this Emergency Petition without requiring Petitioner to futily [sic] attempt to exhaust his administrative remedies . . . ." (Doc. # 1 at 6.) However, federal prisoners, like Petitioner, are subject to the BOP's administrative-remedy program, codified at 28 C.F.R. § 542.10 *et seq.* (*See* Doc. # 10-1 (Decl. of Jason White).) This program comprises a four-step process that a prisoner must complete to exhaust his

administrative remedies.  *See Shivers v. United States*, 1 F.4th 924, 935 (11th Cir. 2021); (*see also* Doc. # 10-1 at 3, ¶ 6.)

With this factual background, the parties' arguments are now examined.

### III.  DISCUSSION

**A.**    **Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction: The Ripeness Doctrine**

Respondent contends that Petitioner's claims "seeking a calculation of FSA credits are not ripe for review," and thus his petition must be dismissed.  (Doc. # 10 at 2.)  According to Respondent, as of the date he filed his response, Petitioner had accrued 285 days of FSA time credits and had a projected release date of December 11, 2029, inclusive of good-conduct credits.  (Doc. # 10 at 6.)  Relying on 18 U.S.C. § 3624(g)(1)(A), Respondent argues that the petition is not ripe for judicial review, as Petitioner's accumulated earned time credits of 285 days do not equal the time remaining on his sentence.  (Doc. # 10 at 6–7 (citing § 3624(g)(1)(A) (providing that an eligible prisoner's FSA earned time credits are applied when they "equal . . . the remainder of the prisoner's imposed term of imprisonment")).)    Respondent contends that Petitioner's claim will not be ripe until at least December 11, 2028, approximately 365 days before the sentence's expiration if the maximum allowable FSA earned time credits are applied toward an early release to supervised release.[3]

---

[3] In his response, filed on September 4, 2025, Respondent represented that Plaintiff's release date was December 11, 2029.  (Doc. # 10 at 6.)  As of today, according to the BOP's public website,

(Doc. # 10 at 6.)  He argues that § 3624(g)(1)(A) exists because FSA earned time credits can fluctuate based on inmates' ongoing participation in eligible programs, their recidivism risk classification, and any conduct resulting in disciplinary action. (Doc. # 10 at 5–6.)  Respondent cites several district court decisions from other circuits, which have determined that a habeas claim alleging the BOP's miscalculation of FSA earned time credits is ripe for review only if a favorable outcome would result in the petitioner's imminent release.  (Doc. # 10 at 6–7.)

Whether a claim is ripe presents a subject matter jurisdictional issue.  *Maron v. Chief Fin. Officer of Fla.*, 136 F.4th 1322, 1329 (11th Cir. 2025).  "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (cleaned up).  The ripeness doctrine prevents "courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies."  *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003) (citation and internal quotation marks omitted).  It also shields

---

his release date is December 16, 2028.  *See* Find an Inmate, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Dec. 1, 2025). This court takes judicial notice of the public records maintained on the BOP's website.  *See* Fed. R. Evid. 201(c); *see also Naveleski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1300 n.25 (N.D. Fla. 2017) ("[I]t is not uncommon for courts to take judicial notice of factual information found on official governmental agency websites."); *United States v. Basher*, 629 F.3d 1161, 1165 n.2 (9th Cir. 2011) (taking judicial notice of the BOP's publicly accessible Inmate Locator records).  The different dates appear to result from the BOP's application of 365 FSA earned time credits, which reduced Petitioner's sentence for an early transfer to supervised release.  Resolving the calculation discrepancy is unnecessary for the purposes of the present motion.

"agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Id.* at 807–08 (citation and internal quotation marks omitted). Because ripeness is fundamentally an issue of timing, subsequent events can render a case ripe for adjudication even if it was not ripe at the time of filing. *Shorter v. Warden*, 803 F. App'x 332, 335 (11th Cir. 2020) (per curiam).

Since ripeness pertains to the court's subject matter jurisdiction, the construed motion to dismiss is examined under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See supra* note 1. Under Rule 12(b)(1), challenges to subject matter jurisdiction can be either facial or factual. *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). The motion will be analyzed as a facial challenge; therefore, the facts alleged in the petition will be taken as true. *See Maron*, 136 F.4th at 1329.

As now explained, this petition is not ripe; however, this conclusion does not rest on Respondent's arguments. While Respondent cites non-binding cases linking jurisdictional ripeness to a prisoner's imminent release, he relies on the BOP's calculations to assert that Petitioner's claims will not be ripe until at least December 11, 2028. (*See* Doc. # 10 at 6); *but see infra* note 4. Yet, he overlooks Petitioner's calculations. While reconciling Petitioner's calculations admittedly is a challenging task, he asserts that he should be eligible for placement in prerelease custody by

December 4, 2026. (Doc. # 1 at 5, ¶ 48.) Assuming for purposes of this analysis that Petitioner's figures are correct and that he continues to qualify for earned time credit (by, among other things, maintaining a low recidivism risk),[4] the eligibility date for placement in prerelease custody remains nearly a year away. On Petitioner's facts, his claims "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[5] *Texas*, 523 U.S. at 300.

In his reply brief, Petitioner contends that his claims do not rely on uncertain future events. He argues that the BOP currently does not factor in accrued and projected FSA time credits when assigning inmates to the Residential Drug Abuse Program (RDAP) and that his completion of the RDAP could potentially advance his release date by an additional year. Petitioner contends that he filed his petition promptly to ensure that all his FSA earned time credits are accurately projected to allow him to participate in RDAP early enough to fully benefit from both the RDAP and FSA programs. (Doc. # 11 at 3.) For the full benefit of both programs, Petitioner

---

[4] 18 U.S.C. § 3624(g) outlines the eligibility criteria for prisoners to have earned time credits applied toward early transfer to prerelease custody or supervised release. First, the prisoner must have earned time credits equal to the remainder of his imposed term of imprisonment. § 3624(g)(1)(A). Second, the prisoner must have demonstrated a reduced recidivism risk or maintained a low risk during imprisonment. § 3624(g)(1)(B). Third, the prisoner's remaining sentence must have been computed "under applicable law." § 3624(g)(1)(C). Fourth, for placement in prerelease custody, the prisoner must have a minimum or low recidivism risk score in the last two reassessments or have a petition approved by the warden. *See* § 3624(g)(1)(D)(i). Fifth, for placement in supervised release, the prisoner must have been assessed as a minimum or low risk to recidivate in the last reassessment. § 3624(g)(1)(D)(ii).

[5] This Memorandum Opinion and Order makes no determination as to precisely when the petition will ripen, as pinpointing an exact timeframe is unnecessary to resolve the current motion.

says that Respondent should have enrolled him in the RDAP by March 2025. (Doc. # 1 at 5, ¶ 48.)

This court lacks jurisdiction to review the BOP's individualized decisions regarding RDAP placement, including any alleged delays in admission or anticipated reductions for completion, which can be up to one year. *See* 18 U.S.C. § 3621(2)(B). Under § 3621(b), the BOP must provide appropriate substance abuse treatment to prisoners with treatable conditions. However, even if a prisoner is eligible for a sentence reduction upon completion of an RDAP, the decision to grant it is solely at the BOP's discretion and is not subject to judicial review. *Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000).[6] "And that decision is not subject to judicial review." *Id.* (citing 18 U.S.C. § 3625(b)).

Based on the foregoing, the court cannot review claims of impermissible delays in RDAP placement or claims that the BOP awarded less than a one-year sentence reduction for RDAP completion. Petitioner cannot bypass this preclusion by arguing that his claims for FSA time credits, both accrued and projected, are ripe based on their potential effect on RDAP placement. Finally, Petitioner has misrepresented the rulings of the out-of-circuit decisions he cites. None of these

---

[6] The Ninth Circuit's decision in *Reeb v. Thomas*, 636 F.3d 1224 (9th Cir. 2011), also is instructive. In *Reeb*, the court held that based on the unambiguous language of 18 U.S.C. § 3625, district courts do not have subject matter jurisdiction to review the denial of a sentence reduction, even after the completion of the RDAP. It explained that "any substantive decision by the BOP to admit a particular prisoner into RDAP, or to grant or deny a sentence reduction for completion of the program, is not reviewable by the district court." *Id.* at 1227.

cases addresses a ripeness challenge or supports the propositions he proffers. (*See* Doc. # 11 at 4.) Accordingly, Respondent's motion to dismiss for lack of subject matter jurisdiction will be granted.[7]

## B.    Rule 12(b) Motion to Dismiss for Failure to Exhaust Administrative Remedies[8]

The discussion in this section presumes, for argument only, that ripeness is not a jurisdictional bar. Assuming subject matter jurisdiction exists, Respondent moves to dismiss the § 2241 petition for failure to exhaust administrative remedies. Petitioner counters that § 2241 imposes no exhaustion requirement. Alternatively, if exhaustion is a requirement, he argues against it in his case, citing the unavailability exception from *Ross v. Blake*, 578 U.S. 632 (2016), and claiming futility as an exception. (Doc. # 1 at 1–2, ¶¶ 10–11; Doc. # 11 at 4–6.)

---

[7] Regarding subject matter jurisdiction, *Tompkins v. Warden Washington*, 2025 WL 3243831 (M.D. Ala. Nov. 20, 2025), and *Woolsey v. Washington*, 2025 WL 2598794, (M.D. Ala. Sept. 8, 2025), provide additional insights concerning 18 U.S.C. § 3625. In these cases, the respondents argued that the Administrative Procedure Act's provisions related to judicial review (5 U.S.C. §§ 701–706) do not apply to any "determination, decision, or order" by the BOP under 18 U.S.C. §§ 3621 through 3626. *See Tompkins*, 2025 WL 3243831, at *4; *Woolsey*, 2025 WL 2598794, at *12; *see generally Reeb v. Thomas*, 636 F.3d 1224, 1225–29 (9th Cir. 2011) (discussing § 3625's preclusion as affecting subject matter jurisdiction). However, "§ 3625 does not preclude judicial review where the petitioner challenges the underlying regulations that establish the criteria governing the BOP's decision-making process." *Woolsey*, 2025 WL 2598794, at *12 (citing *Cook v. Wiley*, 208 F.3d 1314, 1314 (11th Cir. 2000); *United States v. Warmus*, 151 F. App'x 783, 786 (11th Cir. 2005); and *Byrd v. Hasty*, 142 F.3d 1395, 1397 (11th Cir. 1998)). Petitioner has not directly challenged the BOP's regulations, only their application to him personally, raising further questions about this court's subject matter jurisdiction.

[8] "That motions to dismiss for failure to exhaust are not expressly mentioned in Rule 12(b) is not unusual or problematic." *Bryant v. Rich*, 530 F.3d 1368, 1375 (11th Cir. 2008). "[E]xhaustion should be decided on a Rule 12(b) motion to dismiss; and in fact, this Circuit has previously done so." *Id.*

The following discussion pertaining to the motion to dismiss for failure to exhaust administrative remedies unfolds in six parts. First, it rejects the argument that § 2241 does not require exhaustion. Second, it addresses the necessity for a § 2241 federal inmate to exhaust all available administrative remedies within the BOP system before filing the petition. Third, it explores the unavailability exception to the administrative exhaustion requirements. Fourth, it examines the two-step analysis for motions to dismiss based on failure to exhaust administrative remedies. Fifth, it considers the potential and unsettled nature of a futility exception to the exhaustion requirement. Sixth, the arguments for unavailability and futility are analyzed.

1.      *The Judge-Made Requirement of Exhaustion Under § 2241*

Petitioner's first argument—that § 2241 does not require exhaustion—contradicts Eleventh Circuit case law. In the Eleventh Circuit, "prisoners seeking habeas relief, including relief pursuant to § 2241, are subject to administrative exhaustion requirements." *Skinner v. Wiley*, 355 F.3d 1293, 1295 (11th Cir. 2004) (per curiam), *abrogated on other grounds by*, *Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015). These requirements for § 2241 petitions are "judge-

made," *Santiago-Lugo*, 785 F.3d at 474, and do not originate from the Prison Litigation Reform Act of 1996 (PLRA), 42 U.S.C. § 1997e.[9]

More than a decade after the *Skinner* decision, *Santiago-Lugo* clarified that this "judge-made" exhaustion requirement "is still a requirement; it's just not a jurisdictional one." 785 F.3d at 475. Courts cannot "disregard a failure to exhaust and grant relief on the merits if the respondent properly asserts the defense." *Id.* However, they may "skip over" a properly raised exhaustion defense "if it is easier to deny (not grant, of course, but deny) the petition on the merits without reaching the exhaustion question." *Id.* Non-jurisdictional, exhaustion requirements are "claim-processing rules, . . . which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* at 472 (cleaned up). However, the exhaustion requirement "is not merely a gratuitous hurdle imposed to inconvenience litigants. Rather, . . . it serves important purposes." *Carrillo v. Warden FPC Pensacola*, 2025 WL 1439526, at *2 (N.D. Fla. Apr. 21, 2025), *R. & R. adopted*, 2025 WL 1433566 (N.D. Fla. May 19, 2025). As summarized in *Carrillo*:

> First, [the requirement] "protects administrative agency authority," giving an agency the "opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." Second, it promotes efficiency because claims can sometimes

---

[9] The *Skinner* court made it clear that the exhaustion requirement applicable to § 2241 petitions does not come from the PLRA. *See* 355 F.3d at 1294 ("We, like several other circuits, have held that the PLRA does not apply to habeas petitions . . . .").

be resolved at the agency level, obviating the need to proceed to federal court. "And even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."

*Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (addressing the PLRA's exhaustion requirement)); *see also Turner v. Burnside*, 541 F.3d 1077, 1085 (11th Cir. 2008) (describing the PLRA's exhaustion requirement as "designed to eliminate unwarranted federal-court interference with the administration of prisons" by "seeking to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." (cleaned up)).

Here, Petitioner's failure to exhaust will not be overlooked for two reasons. First, Respondent has properly asserted this defense in his response. (Doc. # 10 at 7–11.) Second, addressing the merits of the petition without considering exhaustion would not simplify the analysis.

### 2. *How a § 2241 Petitioner Exhausts Administrative Remedies*

In the context of the PLRA, the United States Supreme Court has held that "proper exhaustion" of administrative remedies is necessary. *Woodford*, 548 U.S. at 84; *see also Geter v. Baldwin State Prison*, 974 F.3d 1348, 1354 (11th Cir. 2020) ("The exhaustion requirement drawn from the PLRA means 'proper exhaustion.'" (quoting *Woodford*, 548 U.S. at 93)). To properly exhaust available administrative remedies, "the inmate must use 'all steps' that the prison makes available." *Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 856 (11th Cir. 2020) (per curiam)

(quoting *Woodford*, 548 U.S. at 90). This means that "the inmate must comply with the prison's deadlines and other procedural rules, including the rules relating to the filing of appeals." *Id.* (citing *Woodford*, 548 U.S. at 90 and *Bryant v. Rich*, 530 F.3d 1368, 1378 (11th Cir. 2008)).

Determining the "boundaries of proper exhaustion" is done by "look[ing] to the requirements of the applicable prison grievance system." *McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (quoting *Sims v. Sec'y, Fla. Dep't of Corr.*, 75 F.4th 1224, 1230 (11th Cir. 2023)). Here, the grievance system is the BOP's administrative-remedy program.[10] *See Blevins*, 819 F. App'x at 857 ("Because Blevins is a federal prisoner, the BOP's Administrative Remedy Program procedural rules apply to her.").

---

[10] The BOP's administrative-remedy program comprises a four-step process that a prisoner must complete to exhaust his administrative remedies. *See Shivers v. United States*, 1 F.4th 924, 935 (11th Cir. 2021); (*see also* Doc. # 10-1 at 3, ¶ 6.) First, the prisoner must submit an institutional-level "informal resolution" request (typically a BP-8 form). *See* 28 C.F.R. § 542.13(a). Second, the prisoner must file a BP-9 form within 20 days following the alleged incident that serves as the basis for the request, unless the inmate demonstrates a valid reason for delay. *See* 28 C.F.R. § 542.14(a)–(b). Third, if unsatisfied with the warden's response, an inmate may submit an appeal using a BP-10 form to the appropriate regional director within 20 days of the date the warden signed the response. *See* 28 C.F.R. § 542.15(a). Fourth, an inmate who is unsatisfied with the regional director's response may submit an appeal to the general counsel using the appropriate BP-11 form within 30 days of the date the regional director signed the response. *See id.*

The regulations also provide response times at each level of the administrative-remedy program. *See* 28 C.F.R. § 542.18. At the institutional level (BP-8 and BP-9), 20 calendar days from the date of filing are allotted to respond to an inmate's request. At the BP-10 level, the regional director has 30 calendar days to respond. At the BP-11 level, the BOP's general counsel has 40 calendar days to respond. *Id.* An inmate exhausts administrative remedies only after properly and timely seeking review at all four levels.

### 3.    *The Unavailability of Administrative Remedies as an Exception to the § 2241 Exhaustion Requirement*

*Blevins*, drawing an analogy from PLRA decisions, recognized the unavailability of administrative remedies as an "important exception to the administrative exhaustion requirement" under § 2241, even when a prison has a formal grievance procedure.  819 F. App'x at 856.  An inmate is not obligated to exhaust remedies that are unavailable.  *Id.* (citing *Ross v. Blake*, 578 U.S. 632, 642 (2016)).  The *Blevins* court identified an "unavailable" remedy as one that "cannot capably be used to obtain some relief."  *Id.* (citing *Ross*, 578 U.S. at 641).  *Ross* outlined three circumstances where an administrative remedy, though formally in place, is essentially unavailable and thus need not be exhausted.[11]  *See* 578 U.S. at 633.  These circumstances, as articulated in *Blevins*, are:

> (1) where "despite what regulations or guidance materials may promise," the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) where the administrative process is "so opaque that it becomes, practically speaking, incapable of use" because "no ordinary prisoner can discern or navigate it," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

---

[11] In *Ross v. Blake*, the Supreme Court rejected the Fourth Circuit's "special circumstances" exception to the PLRA's exhaustion requirement.  587 U.S. 632, 638 (2016).  However, the Court recognized a "textual exception" to mandatory exhaustion in the PLRA:  "An inmate . . . must exhaust available remedies, but need not exhaust unavailable ones."  *Id.* at 642.  Although *Ross* established the excepting circumstances in the context of the PLRA, the Eleventh Circuit in *Blevins* applied these circumstances in determining whether the § 2241 petitioner's administrative remedies were unavailable, thereby exempting the petitioner from the exhaustion requirement. *Blevins*, 819 F. App'x at 856.

819 F. App'x at 856 (quoting *Ross*, 578 U.S. at 643–44).

### 4.    The **Turner** *Two-Step Analysis for Deciding a Motion to Dismiss for Failure to Exhaust Administrative Remedies When Unavailability is Raised*

Failure to exhaust administrative remedies is an affirmative defense.   *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008). When a court reviews a motion to dismiss a § 2241 petition for the petitioner's failure to exhaust administrative remedies and the petitioner argues that remedies are unavailable, a two-step process applies.  *See Blevins*, 819 F. App'x at 856 (citing *Turner*, 541 F.3d at 1082).

First, the court examines "the inmate's and respondent's factual allegations, and if they conflict, take[s] the inmate's version of the facts as true."  *Id.* (citing *Turner*, 541 F.3d at 1082).   If the facts show that the inmate failed to exhaust available administrative remedies, the petition "must be dismissed."  *Id.* (quoting *Turner*, 541 F.3d at 1082).   If the inmate's petition is not dismissed under the first step, the court "must proceed to the second step and 'make specific findings in order to resolve the disputed factual issues related to exhaustion.'"[12]  *Id.* (quoting *Turner*,

---

[12] The exhaustion requirement in *Turner* originated from the PLRA.  Relying on *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the court in *Turner* treated the defense of failure to exhaust under the PLRA as a matter in abatement.  *Turner*, 541 F.3d at 1082 (citing *Bryant*, 530 F.3d at 1374). A matter in abatement is "not generally an adjudication on the merits."  *Bryant*, 530 F.3d at 1374. Where exhaustion is treated as a matter in abatement, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."  *Id.* at 1376 (footnote omitted).  The *Blevins* court acknowledged that "the unavailability exception stems from [PLRA]

541 F.3d at 1082). "And at that second step, the respondent bears the burden of proving that that inmate has failed to exhaust available administrative remedies." *Id.* (citing *Turner*, 541 F.3d at 1082). After making findings on the disputed factual issues, the court must "then decide[] whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 857 (quoting *Turner*, 541 F.3d at 1083); *see also McGuire-Mollica v. Fed. Bureau of Prisons*, 146 F.4th 1308, 1314 (11th Cir. 2025) (describing *Turner*'s two-step process).

In *Blevins*, the Eleventh Circuit applied *Turner*'s and *Ross*'s principles in the context of a § 2241 petition. *See* 819 F. App'x at 856–59. There, the petitioner argued the appeal process was unavailable for several reasons. These reasons included the regional director's repeated rejection of her appeals as illegible (despite her having used the materials provided by the prison), a disciplinary hearing officer's refusal to provide necessary materials for her appeal, and interference by prison staff with her mail. *Id.* at 858. The district court acknowledged only one of the reasons and summarily rejected it. *See id.* On appeal, the Eleventh Circuit found that the petitioner's proffered reasons aligned with the scenarios identified by the Supreme Court in *Ross* that trigger the unavailability exception. *Id.* at 859 (citing *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)).

---

cases." 819 F. App'x at 856 n.3. It noted also that the Eleventh Circuit "ha[d] applied that exception to cases involving § 2241 petitions." *Id.*

In reversing the district court's dismissal of the petitioner's § 2241 petition, the *Blevins* court concluded that the lower court did not properly undertake the *Turner* two-step analysis, noting that had the district court accepted the petitioner's allegations as true under the first *Turner* step, the warden would not have been entitled to dismissal at that step. *Id.* at 858. The district court should have accepted the petitioner's allegations as true and proceeded to the second *Turner* step to make specific findings to resolve disputed factual issues related to exhaustion. *See id.* at 859. Those findings then could have been used to resolve the legal question "about whether the BOP rules adequately informed [the petitioner] about what to do after the Regional Director rejected her appeal as illegible for the second time." *Id.* Because the district court failed to undertake a proper review, the Eleventh Circuit reversed and remanded the case for further proceedings to make the necessary findings related to the exhaustion of administrative remedies. *See id.* at 859–60.

The same year as *Blevins*, in *Geter v. Baldwin State Prison*, the Eleventh Circuit explained how the *Turner* two-step process works incorporating *Ross*:

> [A] proper *Turner* analysis of exhaustion after *Ross* requires the plaintiff to allege a grievance procedure is unavailable to him in response to the defendant's affirmative defense of failure to exhaust. Responding with allegations that a prison system is unavailable allows the district court to complete the necessary analysis set forth in *Turner* for evaluating whether a defendant is entitled to have a complaint dismissed for failure to exhaust. *See Turner*, 541 F.3d at 1082 (requiring a court to compare "the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response" and accepting the plaintiff's version where there is a conflict). While the burden is on

the defendant to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the plaintiff, who, pursuant to *Turner*, must demonstrate that the grievance procedure was "subjectively" and "objectively" unavailable to him. *Id.* at 1085.

974 F.3d 1348, 1356 (11th Cir. 2020) (footnote omitted).[13]

In *Geter*, it was undisputed that the plaintiff "did not properly exhaust his administrative remedies." *Id.* at 1355. Rather, the sole dispute was "whether the grievance process was 'available' to [the plaintiff]." *Id.* The plaintiff argued that the process was unavailable due to his mental disabilities and misleading assistance from a prison official. *Id.* Resultantly, the Eleventh Circuit found it unnecessary to discuss *Turner*'s two-step analysis. Instead, it focused on the availability of the grievance procedure. *Id.* at 1355 n.12 (citing *Turner*, 541 F.3d at 1082; *cf. Dimanche v. Brown*, 783 F.3d 1204, 1214 n.3 (11th Cir. 2015) (declining to address the availability analysis because the exhaustion requirements were satisfied)).

Another Eleventh Circuit decision further discussed a prison official's burden to demonstrate the availability of the administrative remedy. In *Wright v. Georgia Department of Corrections*, 820 F. App'x 841 (11th Cir. 2020) (per curiam), the Eleventh Circuit discussed *Turner*'s availability standard in evaluating an

---

[13] This year, in *Perttu v. Richards*, 605 U.S. 460 (2025), the Supreme Court held "that parties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment." *Id.* at 479. *Perttu* impacts and modifies the application of *Turner*'s holding in cases where the issue of administrative exhaustion is intertwined with the merits of the claim. However, this issue does not arise in the present case.

exhaustion defense under the PLRA. The plaintiff-inmate contended, citing *Turner*, that the district court improperly shifted the burden of proof onto him regarding the availability of administrative remedies. *See id.* at 845. Disagreeing, the Eleventh Circuit said:

> [The plaintiff] confuses the issue of whether a remedy is generally available (*i.e.*, a grievance procedure exists) with whether a remedy was available to him practically speaking. Nothing in *Turner* dictates that defendants initially establish this latter meaning of availability in establishing a lack of exhaustion. Instead, *Turner* mandates that "defendants bear the burden of proving that the plaintiff has failed to exhaust his *available* administrative remedies," which includes showing that a remedy is generally available. 541 F.3d at 1082 (emphasis added). Indeed, it is difficult to conceive of how a defendant could show that a plaintiff failed to exhaust his remedies without showing that there was a remedy to be exhausted. In response, the plaintiff may defeat the failure-to-exhaust argument by showing that the general remedy was effectively unavailable to him.

*Id*. In *Wright*, the plaintiff argued that the grievance procedure at the Georgia Department of Corrections essentially "was an unavailable dead end," as wardens never approved inmate grievances related to medical treatment. *Id.* The Eleventh Circuit held that the plaintiff had "provided no factual support for his assertion." *Id.* Consequently, it affirmed the district court's decision that the defendants had met their burden of showing that the plaintiff did not exhaust available remedies and that the plaintiff had failed to show that the remedy "was effectively unavailable to him." *Id.*

In the unpublished *Blevins* decision, the Eleventh Circuit applied *Ross*'s unavailability exception within the context of a § 2241 petition. This court will adopt the same approach. However, to the extent *Blevins* addresses the burden(s) differently than in the published decision in *Geter*, the court will adhere to *Geter* as to the burden-shifting analysis. Notably, *Geter* is factually similar to this case, as both involve an undisputed failure by the prisoner to properly exhaust administrative remedies, with the primary issue being "whether the grievance process was 'available' to [the prisoner]." 974 F.3d at 1355. Hence, as described in *Geter*, "[w]hile the burden is on the [respondent] to show an available administrative remedy, once that burden has been met, the burden of going forward shifts to the [petitioner], who, pursuant to *Turner*, must demonstrate that the grievance procedure was 'subjectively' and 'objectively' unavailable to him." *Id.* at 1356 (quoting *Turner*, 541 F.3d at 1085). This analysis is detailed in Part III.B.6.

### 5. *Futility as an Exception to Administrative Exhaustion Under § 2241*

In addition to citing *Ross*'s unavailability exceptions to exhaustion of administrative remedies, Petitioner also argues that exhaustion would be futile. (*See* Doc. # 1 at 1–2, ¶¶ 10–11.) Respondent contends that under § 2241, failure to exhaust cannot be excused due to futility, citing two Eleventh Circuit cases: *Rey v. Warden, FCC Coleman-Low*, 359 F. App'x 88 (11th Cir. 2009) (per curiam), and *McGee v. Warden, FDC Miami*, 487 F. App'x 516 (11th Cir. 2012) (per curiam).

21

(Doc. # 11 at 5–6.)   Both cases barred any futility exception to the pre-filing, administrative-exhaustion requirement.   *See Rey*, 359 F. App'x at 91 ("[T]he futility exception to exhaustion is inapplicable to [the petitioner's § 2241] claim because exhaustion is mandatory."); *see also McGee*, 487 F. App'x at 518 ("[Petitioner] has not cited any case establishing that there is a futility exception to the requirement to exhaust administrative remedies under § 2241 . . . .").   However, these cases were decided prior to *Santiago-Lugo*'s determination that circuit precedent requiring exhaustion of administrative remedies as a jurisdictional requirement for § 2241 petitions had been "undermined to the point of abrogation."   *Santiago-Lugo v. Warden*, 785 F.3d 467, 471–75 & nn.4–5 (11th Cir. 2015).   The impact of *Santiago-Lugo* on the applicability of a futility exception has not yet been addressed in a published Eleventh Circuit decision.   *See, e.g.*, *Straughter v. Warden FCC Coleman-Low*, 699 F. Supp. 3d 1304, 1307–08 (M.D. Fla. Oct. 18, 2023) (declining to categorically bar a potential futility exception based on authority cited by the respondent that relied on the Eleventh Circuit's pre-*Santiago-Lugo* understanding of exhaustion when imposing that categorial bar in the first instance).

To date, whether there is a futility exception to the "judge-made" exhaustion requirement applicable to § 2241 petitions is "an unsettled question in the Eleventh Circuit after *Santiago-Lugo*."   *Cros-Toure v. Neely*, 2024 WL 2178618, at *2 (N.D. Ala. Mar. 4, 2024), *R. & R. adopted*, 2024 WL 2163851 (N.D. Ala. May 14, 2024).

However, in the years since *Santiago-Lugo*, some district courts within the Eleventh Circuit, including the Northern District of Alabama in *Cros-Toure*, have found that, if such an exception exists, it necessitates demonstrating "extraordinary circumstances," with the burden of showing futility resting on the inmate. *Id.* (citing *Jaimes v. United States*, 168 F. App'x 356, 359 (11th Cir. 2006) (per curiam) (further citation omitted)); *see also, e.g.*, *Carrillo v. Warden FPC Pensacola*, 2025 WL 1439526, at *2 (N.D. Fla. Apr. 21, 2025) (recommending dismissal of the petitioner's § 2241 petition because he failed to exhaust his administrative remedies and did not present extraordinary circumstances that would justify exemption from the exhaustion requirement), *R. & R. adopted*, 2025 WL 1433566 (N.D. Fla. May 19, 2025); *Gomez-Feliz v. Jenkins*, 2024 WL 5700925, at *2 (N.D. Ga. Dec. 16, 2024) (acknowledging that no futility exception to the exhaustion requirement under § 2241 had been established, but even if this exception existed, it would "apply only in extraordinary circumstances," and concluding that the inmate had failed to demonstrate such circumstances (citing *Jaimes*, 168 F. App'x at 359)). *But see Ochoa-Vasquez v. Swaney*, 2024 WL 2967269, at *4 (S.D. Ga. Apr. 23, 2024) ("There is no futility exception applicable to the exhaustion requirement in a § 2241 proceeding." (cleaned up)); *Perez v. Joseph*, 2022 WL 2181090, at *2 (N.D. Fla. May 4, 2022) ("[T]here are grounds for doubt that a futility exception is available

on a § 2241 petition in this circuit." (quoting *Tankersley v. Fisher*, 2008 WL 4371797, at *3 (N.D. Fla. Sep. 22, 2008))).

Two decisions above relied upon *Jaimes*, which also is a pre-*Santiago-Lugo* decision. Under the precedent at the time, which considered § 2241's exhaustion requirement as jurisdictional, *Jaimes* assumed for the sake of argument that the petitioner could claim futility. 168 F. App'x at 359. In *Jaimes*, the Eleventh Circuit referenced an out-of-circuit decision upon which the petitioner relied to argue futility, without explicitly accepting or rejecting that decision's premise. *Jaimes* noted, though, that the out-of-circuit decision stated that exceptions to the exhaustion requirement apply only in "extraordinary circumstances" and that the petitioner "bears the burden of demonstrating the futility of administrative review." *Id.* (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per curiam)). Under this standard, the Eleventh Circuit determined that the district court correctly denied the § 2241 petition because the petitioner failed to demonstrate extraordinary circumstances or sufficiently explain why pursuing administrative review would be futile. *Id.*

*Jaimes* does not provide clear guidance on the applicability of a futility exception under § 2241 after *Santiago-Lugo*. Considering the shift in this circuit's interpretation of the exhaustion requirement post-*Santiago-Lugo*, it would be inappropriate to categorically dismiss a potential futility exception based on case law

decided before *Santiago-Lugo*. The court will consider whether any of Petitioner's contentions present valid futility exceptions, as done in *Cros-Toure* and *Gomez-Feliz*. However, this task is challenging. While some district courts in the Eleventh Circuit recognize the potential for a futility exception, the decisions focus on why the specific circumstances alleged do not qualify as extraordinary. In practice, decisions addressing futility generally conclude that no extraordinary circumstances are present, reflecting a general reluctance to excuse a prisoner's noncompliance with an administrative-remedy process.

6.    ***Whether the BOP's Administrative-Remedy Program Was Available to Petitioner or Whether Exhaustion Would Have Been Futile***

In his petition, Petitioner makes no mention of an attempt to fully exhaust the BOP's administrative-remedy program. Indeed, he seemingly concedes his failure to exhaust administrative remedies. (*See* Doc. # 1 at 6.) In response to the petition, raising the affirmative defense of failure to exhaust, Respondent has submitted a declaration from an attorney advisor with the BOP. (*See* Doc. # 10-1 (Decl. of Jason White).) In the declaration, the attorney advisor details the administrative-remedy program in place at the BOP (Doc. # 10-1 at 3, ¶¶ 6–7) and states that a review of the BOP's SENTRY records reveals that Petitioner "has submitted 3 administrative remedy filings with BOP" but has "failed to submit administrative remedies relating to his claims at each of the required levels." (Doc. # 10-1 at 3, ¶ 7.) The attorney advisor's declaration and the accompanying SENTRY records demonstrate that the

BOP's administrative-remedy program is available and that Petitioner did not complete that process.

In his reply brief, Petitioner does not challenge Respondent's evidence that he initiated but failed to complete the BOP's administrative-remedy program concerning the claims in his petition. A review of the petition, response brief, and reply brief demonstrates that there is no dispute in the facts concerning (1) the general availability of a grievance procedure within the BOP and (2) that Petitioner did not properly exhaust that procedure. *See Wright v. Ga. Dep't of Corr.*, 820 F. App'x 841 (11th Cir. 2020) (per curiam) ("*Turner* mandates that 'defendants bear the burden of proving that the plaintiff has failed to exhaust his *available* administrative remedies,' which includes showing that a remedy is generally available." (citation omitted)); *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 & n.12 (11th Cir. 2020) (focusing the analysis on whether the grievance process was available to the plaintiff because the parties agreed that the plaintiff had not properly exhausted his administrative remedies).

The dispute here, as in *Geter*, is not whether Petitioner exhausted available administrative remedies—he did not, and that point is undisputed. Rather, the focus is on whether the BOP's administrative-remedy program was "'subjectively' and 'objectively' unavailable to him." *Geter*, 974 F.3d at 1356. Petitioner also attempts to invoke a futility exception to § 2241's exhaustion requirement.

26

As to unavailability, the Eleventh Circuit in *Geter*—relying on *Turner*—places the burden on the prisoner to show that the grievance process was both "subjectively" and "objectively" unavailable.[14]  *See* 974 F.3d at 1356; *accord Wright*, 820 F. App'x at 845 (citing *Turner* and holding that once the prison official shows a remedy is generally available, the burden shifts to the prisoner to demonstrate that the generally available remedy was effectively unavailable to him). As for a potential futility exception, the burden likewise would lie on Petitioner.  *See, e.g.*, *Cros-Toure v. Neely*, 2024 WL 2178618, at *2 (N.D. Ala. Mar. 4, 2024). Petitioner's arguments focusing on unavailability and futility find no support in the facts or law.

First, Petitioner makes several arguments, when liberally interpreted, that arguably fall into the first category the Supreme Court in *Ross* identified as triggering the unavailability exception.  *See Ross v. Blake*, 578 U.S. 632, 643–44 (2016).  He argues that the BOP "appears to misunderstand" the FSA, making it improbable that further review through "multiple layers of BOP bureaucracy" will rectify this issue, and that the BOP has "a pre-determined position of defying the [FSA] through the systematic non-compliance with [the] FSA and federal court decisions." (Doc. # 11 at 5.)  Although Petitioner couches his assertions in a futility

---

[14] While the court follows *Geter* on the allocation of these burdens, the outcome would be the same even if the burden were assigned to Respondent.

exception, it appears that he is attempting to argue that the BOP's administrative process "operates as a simple dead end," with BOP officials unwilling to provide any relief to aggrieved inmates. *Ross*, 578 U.S. at 643. But these arguments, even liberally interpreted, do not suffice to show unavailability under *Ross* or, alternatively, extraordinary circumstances under a potential futility exception.[15]

The essence of these arguments is that exhaustion should be excused because the BOP is certain to rule against Petitioner. However, the court is unaware of any Supreme Court or Eleventh Circuit decision recognizing this ground as a valid exemption for unavailability or futility.[16] District courts in other circuits have found

---

[15] Whether Petitioner's arguments for excusing exhaustion arise out of principles of unavailability or futility is unclear, and the lines are blurred as to when an argument of futility is really one of unavailability and vice versa.

[16] Arguing that "exhaustion requirements should not be applied if pursuing remedies through the administrative process is futile" (Doc. # 11 at 5 & n.13), Petitioner string cites cases unhelpful to his position, including *Hrycuna v. Ormond*, 2019 WL 1304250, at *4 (E.D. Va. Feb. 19, 2019), *R. & R. adopted*, 2019 WL 1302592 (E.D. Va. Mar. 21, 2019), which directly opposes his position. In *Hrycuna*, the magistrate judge's report and recommendation (R&R) acknowledged that the judicially imposed exhaustion requirement in § 2241 can be excused "when pursuit of administrative remedies would be futile." 2019 WL 1304250, at *4. However, the R&R went on to "[a]ccept[] that § 2241's exhaustion requirement demands compliance with agency procedures to whatever extent possible," *id.*, and it found that the petitioner had failed to comply with those procedures:

> Here, each of [the petitioner's] appeals was rejected because of specific procedural deficiencies. In each instance, [the petitioner] had the opportunity to resubmit his appeal with corrections or an explanation of the deficiency. He never attempted to do so but instead filed suit in federal court seeking habeas relief. Excusing the exhaustion requirement in this case would render the BOP disciplinary process a dead letter and invite future disregard of its requirements.

*Id.* at *5.

that the BOP's administrative remedy process is not futile "simply because a prisoner anticipates he will be unsuccessful in his administrative appeals." *Williams v. Warden, Allenwood-Low*, 2024 WL 4204277, at *2 (M.D. Pa. Sep. 16, 2024) (collecting cases). Additionally, as found by a district court in the Eastern District of New York, the BOP's prior rejection of similar claims did not render exhaustion futile, since it was possible for precedent to be overruled and the BOP's general counsel has the authority to change agency policy. *See Lallave v. Martinez*, 609 F. Supp. 3d 164, 180 (E.D.N.Y. 2022) (finding that futility could not be presumed solely based on previous unfavorable decisions, as it "was theoretically possible that the precedent would be overruled" (collecting cases)). Hence, other district courts have required more than a mere prediction of an adverse outcome to excuse exhaustion on the grounds of futility. This reasoning is particularly relevant to Petitioner's argument here, especially given the lack of factual support for his conclusion.

Furthermore, Petitioner's arguments expressing pessimism about the administrative outcome closely resemble those rejected in *Jaimes* and *Wright*. *See Jaimes v. United States*, 168 F. App'x 356 (11th Cir. 2006) (per curiam); *Wright v. Ga. Dep't of Corr.*, 820 F. App'x 841 (11th Cir. 2020) (per curiam). In *Jaimes*, the petitioner contended that pursuing administrative remedies would be futile, as he believed the BOP would not rectify his concerns about sentencing credit without

judicial intervention.  *See* 168 F. App'x at 359.  Rejecting this argument, the Eleventh Circuit reasoned that the petitioner "d[id] not adequately explain why administrative review would prove futile."  *Id.*  In *Wright*, the § 1983 plaintiff claimed that the grievance procedure at the Georgia Department of Corrections essentially "was an unavailable dead end," as wardens never approved inmate grievances related to medical treatment.  820 F. App'x at 845.  However, the Eleventh Circuit found that the plaintiff had "provided no factual support for his assertion."  *Id.*  Consequently, the Eleventh Circuit affirmed the district court's decision that the defendants had met their burden of showing that the plaintiff did not exhaust available administrative remedies and that the plaintiff had failed "to defeat" that showing.  *Id.*

Similarly, as in *Jaimes* and *Wright*, Petitioner speculates, without a factual basis, that he will not receive a favorable administrative ruling.  He offers only conclusory statements asserting nothing more than his mere belief that exhaustion of administrative remedies would be futile.  *See Higginbottom v. Carter*, F.3d 1259, 1261 (11th Cir. 2000) (holding that an inmate's belief that administrative procedures are futile or needless does not excuse exhaustion in the context of the PLRA); *see also Martin v. Neely*, 2024 WL 4521942, at *1 (N.D. Ala. Sept. 19, 2024) ("[Section 2241 petitioner's] belief that exhaustion would have been futile is entirely conclusory and thus insufficient to excuse her failure to exhaust."), *R. & R. adopted*,

2024 WL 4520939 (N.D. Ala. Oct. 17, 2024); *Alanis v. Neely*, 2024 WL 532338, at *1 (N.D. Ala. Jan. 19, 2024) (finding that the petitioner's conclusory futility arguments were insufficient due to the absence of a showing of extraordinary circumstances or claimed barriers to the remedy process (citation omitted)), *R. & R. adopted*, 2024 WL 520021 (N.D. Ala. Feb. 9, 2024).  It is not possible to find futility in this case, as Petitioner neither completed the administrative remedy process nor demonstrated any extraordinary circumstances that would justify his failure to do so.

Second, Petitioner argues that pursuing the BOP's administrative-remedy program would be futile and result in "irreparable harm" to him, citing concerns about his RDAP admission.  (Doc. # 1 at 2, ¶ 12; Doc. # 11 at 4.)  However, by getting all the way to the BP-10 level but not completing the BOP's administrative-remedy program prior to seeking judicial intervention, Petitioner undermines his argument for excusing the exhaustion requirement.  Additionally, as previously discussed, the BOP's decisions regarding RDAP placements and awards are not subject to judicial review.  *See Cook v. Wiley*, 208 F.3d 1314, 1319 (11th Cir. 2000) (citing 18 U.S.C. § 3625(b)).

Furthermore, the offending FSA Time Credit Assessment, which Petitioner relies upon to support his arguments, is dated February 26, 2025.  (Doc. # 1-1 at 2.)  Under a standard exhaustion schedule, the administrative-remedy process could extend up to 160 days at its maximum (20 days for filing the BP-9 request; 20 days

for the warden's response; 20 days for filing the BP-10 appeal; 30 days for the regional director's response; 30 days for filing the BP-11 appeal; and 40 days for the general counsel's response). *See* 28 C.F.R. § 542.10 *et seq*. On that timeline, it appears that exhaustion could have been completed by early August 2025 at the latest. While extensions or justified delays can lengthen that process, *see Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 562 (11th Cir. 2016), it is challenging to envision a realistic timeline where exhaustion would have been unfeasible. Instead of completing all steps of the BOP's administrative-remedy program, he filed an unexhausted petition in April 2025. (*See* Doc # 1 at 1, 6.) Based on these facts, construed favorably to Petitioner, his failure to fully exhaust undermines both his claim of futility and his argument that the risk of irreparable harm justifies bypassing the exhaustion requirement.

Third, Petitioner argues that his failure to exhaust administrative remedies should be excused because his § 2241 petition involves a question of statutory interpretation. (Doc. # 11 at 6.) This contention does not fit the criteria for unavailability outlined in *Ross v. Blake*, 578 U.S. 632 (2016). Instead, Petitioner asserts that "multiple circuits have recognized that even prudential exhaustion requirements must yield to cases like this one where the challenge involves statutory interpretation rather than factual disputes." (Doc. # 1 at 2, ¶ 13; Doc. # 11 at 6.) In support of this assertion, Petitioner cites two cases. The first case, *Geiger v. United*

*States*, does not appear to exist as cited by Petitioner.[17]  The second case, *Elwood v. Jeter*, 386 F.3d 842 (8th Cir. 2004),[18] provides no support for Petitioner's contended statutory-interpretation exception to the exhaustion requirement.  The *Elwood* petitioner's failure to exhaust his administrative remedies was excused because the government waived the requirement when it conceded that "[the petitioner's] continued use of the grievance procedure to contest the validity of the BOP's new policy would be futile," not because his case involved a question of statutory interpretation.  *Id.* at 844 n.1.  Respondent in this case did not waive the requirement that Petitioner exhaust his administrative remedies before filing, as evidenced by his raising the issue of Petitioner's failure to exhaust in his response.  (*See* Doc. # 10 at 7–11.)  Additionally, in a recent decision examining a § 2241 petitioner's argument that exhaustion is not requirement when a claim presents a question of statutory interpretation, a district court in the Northern District of Alabama said, "[T]he court is unable to locate any Eleventh Circuit precedent recognizing an exception to the

---

[17] In his petition, Petitioner cites *Geiger* as 502 F.2d 1290, 1292–93 (8th Cir. 1974).  (Doc. # 1 at 2, ¶ 13.)  In his reply brief, Petitioner cites *Geiger* as 502 F.2d 1290, 1292 (8th Cir. 1974).  (Doc. # 11 at 6 n.15.)  A search for the case at the citations provided by Petitioner turns up a case called *United States v. Ingham*, 502 F.2d 1287 (5th Cir. 1974), which has nothing to do with the administrative-exhaustion requirement or any potential exceptions thereto.  Independent research turned up a case brought by a *pro se* plaintiff in the Middle District of Pennsylvania, but it analyzes exhaustion in the context of the Federal Tort Claims Act and does not mention a statutory-interpretation exception.  *See generally Geiger v. United States*, 2023 WL 3136405 (M.D. Pa. Apr. 27, 2023).

[18] In both his petition and his reply brief, Petitioner incorrectly cites the *Elwood* case as *Elwood v. Jeter*, **368** F.3d 842, 844 n.1 (8th Cir. 2004) (emphasis added).  (Doc. # 1 at 2, ¶ 13; Doc. # 11 at 6 n.15.)

administrative exhaustion requirement for a claim that presents a question of statutory interpretation." *Nuckles v. Yeager*, 2025 WL 1490057, at *2 (N.D. Ala. May 22, 2025). Petitioner's arguments for excusing exhaustion based on statutory interpretation lack supporting authority and misinterpret the cited cases.

Fourth and finally, Petitioner cites additional case law to support his futility argument generally (Doc. # 1 at 1–2, ¶ 11; Doc. # 11 at 5 n.13), but the cited cases fail to substantiate his position. In *Woodford v. Ngo*, the United States Supreme Court held that under the PLRA, "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory."[19] 548 U.S. 81, 85 (2006). As for *Putnam v. Winn*, the court recognized that if a court has habeas jurisdiction, "a common law exhaustion rule applies, which can be waived if exhaustion would be futile." 441 F. Supp. 2d 253, 255 (D. Mass. 2006). However, significantly, the *Putnam* court went on to say that "[t]he petitioner has not demonstrated he properly exhausted his administrative remedies, *but all parties agree that exhaustion would be futile here* and therefore waivable." *Id.* (emphasis added). Finally, the petitioner in *United States v. Basciano* initiated the administrative review process and submitted multiple requests for administrative remedies before seeking habeas relief.[20] *See* 369 F. Supp.

_____

[19] Petitioner, however, cites the concurring opinion in which Justice Breyer recognizes the "well-established exceptions to exhaustion found in administrative law." *Woodford*, 548 U.S. at 103 (Breyer, J., concurring) (collecting cases). (*See* Doc. # 1 at 1, ¶ 11; Doc. # 11 at 5 n.13.)

[20] In his reply brief, Petitioner cites another case in addition to *Woodford*, *Putnam*, and *Basciano*: *Hrycuna v. Ormond*, 2019 WL 1304250 (E.D. Va. Feb. 19, 2019). (Doc. # 11 at 5 n.13.) For

2d 344, 348–49 (E.D.N.Y. 2005).  This is in stark contrast to Petitioner here who did not attempt to initiate, let alone exhaust, the administrative-remedy process. Petitioner's reliance on *Woodford*, *Putnam*, and *Basciano* fails to substantiate a futility argument.

Based on the foregoing, Respondent has met his burden to show that Petitioner failed to exhaust properly the BOP's available administrative-remedy program. Petitioner failed to show that this remedy was effectively unavailable to him or that availing himself of this remedy would be futile.  Therefore, Petitioner's § 2241 petition must be dismissed for failure to exhaust administrative remedies.

## IV.  CONCLUSION

Subject matter jurisdiction is lacking because Petitioner's petition is not ripe. Alternatively, Petitioner failed to properly exhaust his available administrative remedies before filing a § 2241 petition.  Petitioner's arguments that the BOP's administrative-remedy program is unavailable to him or that exhaustion is futile are unavailing.  Petitioner has provided no reason, factual or otherwise, to justify a finding that the BOP's administrative-remedy program is unavailable to him. Additionally, assuming futility is an exception to exhaustion under § 2241, Petitioner has not presented extraordinary circumstances demonstrating the futility of

---

further discussion as to why Petitioner's reliance on *Hrycuna* fails to substantiate his futility arguments, *see supra* note 16.

administrative review.  Petitioner's § 2241 petition is premature until such time as he exhausts the BOP's administrative-remedy program.

Based on the foregoing, it is ORDERED as follows:

(1)    Respondent's construed Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is GRANTED;

(2)    Respondent's construed Rule 12(b) motion to dismiss for failure to exhaust administrative remedies is GRANTED in the alternative; and

(3)    The Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 is DISMISSED without prejudice.

Final Judgment will be entered separately.

DONE this 2nd day of December, 2025.

_/s/ W. Keith Watkins_
UNITED STATES DISTRICT JUDGE
